IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BLONDELL SIMMONS,** ) | | C.A. No. 07-50 Erie |
| Plaintiff ) | | |
| ) | | |
| v. ) | | |
| ) | | **District Judge McLaughlin** |
| **JEFFREY A. BEARD, et al.,** ) | | **Magistrate Judge Baxter** |
| Defendants. ) | | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that:

1. The Motion to Dismiss filed by Defendants DiMarco and Foltz [Document # 23] be granted;

2. The Motion for Summary Judgment filed by Defendants Beard, McCloskey and Winstead [Document # 29] be granted; and

3. The Motions for Summary Judgment filed by Plaintiff [Document ## 32 and 39] be denied.

**II.     REPORT**

    **A.     Relevant Procedural History**

On March 21, 2007, Plaintiff Blondell Simmons, an inmate formerly incarcerated at the State Correctional Institution at Cambridge Springs, Pennsylvania ("SCI-Cambridge Springs"), filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] Named as Defendants are: Jeffrey A. Beard, Secretary of the Pennsylvania Department of Corrections ("Beard"); Rhonda A. Winstead, Superintendent at SCI-Cambridge Springs ("Winstead"); Christine McCloskey, former Business Instructor at SCI-Cambridge Springs ("McCloskey"); Doctor DiMarco, Medical Director at SCI-Cambridge Springs ("DiMarco"); Kathy Foltz, a nurse practitioner at SCI-Cambridge Springs

---

[1] Plaintiff is presently incarcerated at the State Correctional Institution at Muncy, Pennsylvania.

("Foltz"); and Rich Baronti, an Ultrasound Technician at SCI Cambridge Springs ("Baronti").[2] In her complaint, Plaintiff alleges that Defendants violated her Eighth Amendment rights. In particular, Plaintiff alleges that Defendant McCloskey used excessive force against her, and Defendants Beard, Winstead, DiMarco, and Foltz were deliberately indifferent to her serious medical needs. (Complaint at pp. 11-12). As relief, Plaintiff seeks monetary damages.

On October 19, 2007, Defendants DiMarco and Foltz filed a motion to dismiss [Document # 23], seeking dismissal of Plaintiff's complaint for failure to state a claim upon which relief may be granted.[3] Defendants Beard, McCloskey, and Winstead subsequently filed a motion for summary judgment on November 9, 2007, arguing that Plaintiff's claims fail as a matter of law. [Document # 29].[4] In response to Defendants' motions, Plaintiff filed two motions for summary judgment [Document ## 32 and 39], requesting that judgment be entered against the Defendants based upon the allegations of her complaint. Both sets of Defendants filed briefs in opposition to Plaintiff's motion for summary judgment. [Document ## 34, 35]. In addition, Plaintiff has filed multiple briefs, either in opposition to Defendants' motions or in support of her own, all of which essentially restate the allegations of her complaint. [Document ## 33, 40, 47, 48, and 49]. This matter is now ripe for consideration.

---

[2] According to the docket entries in this case, Defendant Baronti was not served with legal process until February 19, 2008, and has not yet filed a response to Plaintiff's complaint. As a result, he is not a party to any of the dispositive motions pending before this Court, and the claims against him will not be considered at this time.

[3] This motion also contains an alternative motion for more definite statement, which will be addressed in a separate Order.

[4] Fed.R.Civ.P. Rule 12(b) provides that "[i]f, on a motion ...to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56,..." In this instance, the Court has been presented with all of Plaintiff's medical records, which are attached as exhibits to the brief in support of the summary judgment motion filed by Defendants Beard, Winstead, and McCloskey. [Document # 30]. As a result, the motion to dismiss filed by Defendants DiMarco and Foltz will be treated and disposed of as a summary judgment motion.

**B.      Relevant Factual History**

While incarcerated at SCI-Cambridge Springs, Plaintiff was enrolled in a business typing course from November 2005 through April 2006. (Complaint at Section IV.A). The instructor of the course was Defendant McCloskey. (Complaint at Section IV.C.1). Plaintiff alleges that, during the eight to ten months she was enrolled in Defendant McCloskey's business course, her keyboard keys would "tighten and stiffen now and then," but that she "would work through it not thinking anything was wrong." (Id.). When she "neared the 60th chapter of the text book, ... [she] had taken four-five minute speed timings each one not exceeding 36-38 wpm." (Complaint at Section IV.C.2). Since she had typed 48 wpm prior to this assignment, she mentioned the decreased speed to Defendant McCloskey, who responded "that was my choice." (Id.). Plaintiff claims that, when she returned to her seat, a "speed adjustment dialog box" appeared on her computer screen at a point when it was not supposed to appear. Plaintiff also noticed the "speed set adjustment" read 23 wpm, although she had "set the speed at 50 wpm." (Id.). This caused her to believe that "something was terribly wrong," and that something happened when Defendant McCloskey "inserted the computer's programming disk ... after pulling it from the computer's disk drive while [she] was in full-swing of typing the assignment." (Id.).

Plaintiff claims that "[b]ecause of this incident, [Defendant McCloskey] completed [her] out of the assignment of having not meeting [sic] the speed timing of 38 wpm when it required 40 wpm." (Id.). This led Plaintiff to believe that Defendant McCloskey "did something beyond the protocol for the speed to decrease instead of increasing." (Id.).

Three days later, Plaintiff awoke from sleep and her arms were "totally numb." (Complaint at Section IV.C.3). She also noticed severe "popped veins" on the tops of her hands and around her wrist, as well as a large lump on the inside and top of both wrists, and several small lumps around the top of both. (Id.). This, again, led Plaintiff to "believe that the entire time [she] was experiencing the keyboarding keys tightening and stiffening is all times [Defendant McCloskey] was tampering with the Computer's Programming Disk removing it

3

from its computer's disk drive while [Plaintiff] was in the middle of typing-completing the assignments." (Id.).

According to Plaintiff, the last four "extensive speed timings" caused severe pain, stiffness, and numbness all the way to her shoulders. (Complaint at Section IV.C.4). Plaintiff claims that, during the speed timings in question, she did not feel any pain, "probably because [she] was not looking for it that [her] mind was so heavy set on completing and getting out of the last part of that programming that [she] was probably numb to it and shutting everything out due to [Defendant McCloskey's] behavior and being under so much forced driven pressure." (Complaint at Section IV.C.5). Plaintiff states further that she walked into the business course "being singled out and targeted" by Defendant McCloskey, who was "screaming yelling at [her], snatching items from [her] hands, using racial slurs towards [her], slamming very harshly a door directly in front of [her] while studying, pushing and shoving [her] on two different occasions degrading [her] appearance, mentioning [her] crime, pressuring and demanding [her] through the typing-speed timings, [and] constantly using innuendos about [her] situation with society...." (Complaint at Section IV.C.8).

Plaintiff alleges that "through the entire time of [her] seeking medical treatment for the lumps, swollenness, stiffness, numbness, and pain the medical staff [at SCI-Cambridge Springs] gave very inadequate medical care and procedures." (Complaint at Section IV.C.9). In particular, Plaintiff claims that:

(i) Defendant Foltz ordered x-rays and diagnosed her with carpal tunnel syndrome, which diagnosis was questioned by Plaintiff. Defendant Foltz then required Plaintiff to wear braces on her wrists, which allegedly caused her "left wrist lumps" to get bigger, and gave her "more pain to the left side wrist, elbows - especially, arms, shoulder, and left side neck." (Complaint at Section IV.C.10);

(ii) Defendant Foltz prescribed Voltaren, an anti-inflammatory medication, but, after two months of taking Voltaren, Plaintiff began to experience "hardness to [her] stomach." (Complaint at Section IV.C.9). As a result, Defendant DiMarco took Plaintiff off the Voltaren and put her on Acetaminophen "without telling [her] the dangers of this medication." (Id.). Plaintiff "began to feel lumps around [her] stomach less than two months later." She alleges that, from that point on, all of her sick calls

4

> "was not direct answers [sic] or even in the context of answers, delayed or given some sort of inappropriate procedure." (Id.). Plaintiff states that Defendant Foltz repeatedly requested that she be examined by Defendant DiMarco, but he repeatedly refused to see her. (Id.). Through the grievance process, Plaintiff was given numerous appointments but "was not being seen, examined, treated or given any kind of diagnosis." (Id.). Plaintiff was later transferred to SCI-Muncy, where she allegedly found out she had a "2½" gastrointestinal hernia." (Id.).
>
> (iii) Due to severe back spasms from a past motor vehicle accident, Plaintiff underwent an ultrasound, which was allegedly done "inappropriately due to not being able to locate [her] kidneys on the screen." Plaintiff alleges that the technician "dug deep into the left side holding down the scanner pressing very harshly dragging and digging with the scanner." As a result, Plaintiff claims that she has a "huge lump on [her] right side that is rapidly growing;" yet, Defendant DiMarco would not examine her. (Complaint at Section IV.C.10).

Plaintiff alleges that, "at the start of the incidents in the Business Education Classroom," she approached Defendant Winstead "to discuss the incidents concerning [Defendant] McCloskey," but "when the Superintendent [saw Plaintiff] walking towards her she spun away from [Plaintiff], walked at least 10 feet away and turned around and stood there, as if she did not want [Plaintiff] to come near her or to talk with her...." (Complaint at Section IV.C.12). Nevertheless, Plaintiff claims that Defendant Winstead "knew fully what was occurring in the business classroom, [yet] she totally ignored [her] situation." (Id.). Plaintiff claims further that she wrote to Defendant Beard "on numberous [sic] occasions along with several of his staff members the entire year of 2005 to resolve the situation or some sort of resolution." (Id.).

### C. Standards of Review

#### 1. Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989);

Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

### 2. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine

6

issue for trial. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-to support his claims). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002) quoting Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, 277 F.3d 658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or weight of the evidence, rather, it may only determine the existence of a triable issue of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United

7

States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### D.     Discussion
#### 1.     Excessive Use of Force

"In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm." Wilson v. Shannon, 982 F.Supp. 337, 340 (E.D.Pa. 1997), citing Hudson v. McMillian, 503 U.S. 1, 7 (1992). However, *de minimis* uses of physical force are excluded from constitutional recognition, provided that the use of force is not "'repugnant to the conscience of mankind.'" Whitley v. Albers, 475 U.S. 312, 327 (1986), quoting, Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Reyes v. Chinnici, 54 Fed. Appx. 44, 48 (3d Cir. 2002)("[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically").

Plaintiff makes essentially three claims against Defendant McCloskey for excessive use of force in violation of her Eighth Amendment rights. The first of these claims is based upon her "belief" that Defendant McCloskey "tampered" with Plaintiff's computer or software program while Plaintiff was typing and somehow caused her keyboard keys to tighten or stiffen, and her keyboard speed to decrease. Plaintiff alleges that this "computer tampering" caused the lumps on

8

her wrists and alleged pain in her wrists, arms, elbows shoulders. (Complaint at Section IV.C.2-5). Plaintiff's second excessive use of force claim is that Defendant McCloskey was "snatching items from [her] hands" and "pushing and shoving [her] on two different occasions." (Complaint at Section IV.C.8). Plaintiff's remaining claim against Defendant McCloskey is that she was screaming and yelling at her, using racial slurs, degrading her, mentioning her crime, slamming doors, and pressuring and demanding her "through the typing-speed timings." (Id.). These claims will be addressed below, in turn.

### a. Computer Tampering Claim

Plaintiff's "computer tampering" claim is based upon her theory that Defendant McCloskey physically altered Plaintiff's computer in such a way that the keyboard keys tightened and the keyboard speed decreased. According to Plaintiff, Defendant McCloskey did this by "tampering with the Computer's Programming Disk removing it from its computer's disk drive while [Plaintiff] was in the middle of typing-completing the assignments." (Complaint at Section IV.C.3). In response to this claim, Defendant McCloskey has submitted her own Declaration, certifying under oath, in pertinent part, as follows:

> 6. The [computer software] program has 60 keyboarding lessons. When a student chooses to do a timed test while working in one of the ... lessons, the ... software program identifies the speed goal associated with the lesson on the computer screen through a dialog box. This dialog box has nothing to do with "speed adjustment" as alleged by [Plaintiff], and it does not mean that the computer or keyboard speed is "set" or "fixed" in any way, or that the program exercises any control over the student or how fast she types. Although [Plaintiff] claims that she "set the speed at 50 wpm" no one can "set" the speed for the timing test. Rather, the program simply tells the student, in effect, "you should be striving to type at this speed" and "here is the actual speed you achieved." The program does nothing more than perform tasks that formerly were done manually – timing and counting the words typed in a 3 or 5-minute timeframe. Neither I nor anyone else at SCI-Cambridge Springs is capable of altering or "tampering" with that program, or affecting the typing speed of any student typing at a computer.
>
> 7. The [computer software] software is a network program. It is not

> on a disk. The only disks that are used in the class would be floppy disks, on which the instructors download the results of the student's session.

(McCloskey Declaration attached as Exhibit A to Document # 30, at ¶¶ 6-7).

The foregoing statements establish that Defendant McCloskey could not have tampered with Plaintiff's computer in the way Plaintiff claims she did. Plaintiff has submitted no evidence to contradict these statements nor has she submitted any evidence to support her claim that her computer or keyboard was altered by Defendant McCloskey. Thus, Plaintiff's "computer tampering" claim is based solely upon her unsubstantiated assertions and suspicions, which are insufficient to create a genuine issue of material fact. Firemen's Ins. Co. Of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). As a result, summary judgment should be entered in favor of Defendant McCloskey and against Plaintiff with regard to this claim.

### b.     Physical Contact Claims

Plaintiff claims that Defendant McCloskey snatched items from her hands and pushed her on two different occasions; however, Plaintiff has failed to allege that she was injured, in any way, as a result of these alleged incidents. The absence of a serious injury to the inmate is relevant to this Court's inquiry as to whether excessive force was used. Hudson, 503 U.S. at 7. Moreover, the Eighth Amendment "does not protect an inmate against an objectively *de minimis* use of force." See Walker v. James, 2007 WL 210404 at *8 (E.D.Pa. Jan. 23, 2007), citing Smith v. Mensinger, 293 F.3d 641, 649 (#d Cir. 2002). Allegations of far more force than Plaintiff has alleged have been deemed *de minimis*, and dismissed at the summary judgment stage. See, e.g., Reyes, 54 Fed. Appx. at 48 (summary judgment granted where corrections officer punched inmate in the shoulder to avoid being spit on); Thomas v. Ferguson, 361 F.Supp.2d 435, 439-41 (D.N.J. 2004)(summary judgment granted because "[e]ven if proven to be true and for no necessary purpose, Defendants' alleged conduct... does not meet the Constitutional standard for a claim of a malicious and sadistic use of force 'repugnant to the conscience of mankind,'" where

inmate alleged he was punched and shoved by corrections officers); Wilson v. Reinhart, 2003 WL 21756393 (D.Del. Jul. 29, 2003)(summary judgment granted where officer sprayed inmate in the face with mace).

Here, Plaintiff's allegations of having items snatched from her hands and being pushed or shoved on two occasions, without injury, fail to describe uses of force that are "repugnant to the conscience of mankind." Indeed, such uses of force are objectively *de minimis* and are insufficient to establish an Eighth Amendment violation. Thus, summary judgment should be entered in favor of Defendant McCloskey and against Plaintiff with regard to these claims.

### c. Verbal Harassment

Plaintiff claims that she was "singled out and targeted" for verbal harassment by Defendant McCloskey. Assuming these claims are true, it is well-settled that the use of words, no matter how violent, is not actionable under 42 U.S.C. § 1983. See Wright v. O'Hara, 2004 WL 1793018 at *7 (E.D.Pa. Aug. 11, 2004)("[w]here plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit")(citations omitted); MacLean v. Secor, 876 F.Supp. 695, 698-99 (E.D.Pa. 1995)("[i]t is well-established that verbal harassment or threats ... will not, without some reinforcing act accompanying them, state a constitutional claim"); Murray v. Woodburn, 809, F.Supp. 383, 384 (E.D.Pa. 1993)("Mean harassment ... is insufficient to state a constitutional deprivation")(listing cases). Thus, Plaintiff's claims of verbal harassment do not amount to a constitutional violation and summary judgment should be entered in favor of Defendant McCloskey with regard to such claims.

### 2. Eighth Amendment Deliberate Indifference Claims

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to

adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[5] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

Here, Plaintiff alleges that she received "very inadequate medical care and procedures" while she was incarcerated at SCI-Cambridge Springs. The very nature of this claim reveals that Plaintiff is questioning the adequacy of the treatment she received, not the absence of the same. Indeed, Plaintiff's medical records plainly demonstrate that Plaintiff received an abundance of medical treatment while she was confined at SCI-Cambridge Springs. As summarized by Defendant Foltz, Plaintiff's medical records indicate that she was seen and/or treated by Defendant Foltz, alone, on 29 occasions between September 7, 2005, through November 9, 2006. (See Foltz Declaration attached as Exhibit D to Document # 30, at ¶ 6). During this same period of time, Plaintiff was also seen and/or treated on a number of occasions by Defendant DiMarco

---

[5] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

and other members of the medical staff at SCI-Cambridge Springs. In addition, Plaintiff was sent for lab work on nine occasions from November 2004 through October 2006. (Id. at ¶ 5). She also had x-rays taken of her left wrist, abdomen, and spine, as well as a renal ultrasound on December 29, 2005, and a pelvic ultrasound on April 28, 2006. (Id. at ¶¶ 9, 11, 12 and 18). This litany of medical treatment belies Plaintiff's claim that Defendants were deliberately indifferent to her serious medical needs. At most, Plaintiff's allegations invoke medical negligence, which is not actionable as an Eighth Amendment claim. Estelle, 429 U.S. at 106. Moreover, to the extent Plaintiff voices her disagreement with the medical treatment that was provided, such allegations also fail to establish a constitutional violation. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976)(holding that a prisoner's disagreement with a course of medical treatment does not sustain a cognizable Eighth Amendment claim).

For the foregoing reasons, therefore, summary judgment should be granted in favor of Defendants with regard to Plaintiff's Eighth Amendment deliberate indifference claims.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

1.  The Motion to Dismiss filed by Defendants DiMarco and Foltz [Document # 23] be granted;

2.  The Motion for Summary Judgment filed by Defendants Beard, McCloskey and Winstead [Document # 29] be granted; and

3.  The Motions for Summary Judgment filed by Plaintiff [Document ## 32 and 39] be denied.

The only claims that should remain in this case are those that Plaintiff has brought against Defendant Baronti, who has not yet filed a response to the complaint.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a

waiver of any appellate rights.  See, e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


                                              /s/ Susan Paradise Baxter
                                              SUSAN PARADISE BAXTER
                                              Chief U.S. Magistrate Judge


Dated: April 9, 2008

cc:      The Honorable Sean J. McLaughlin
         United States District Judge